**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

IN RE:

DON WARNER REINHARD,                                    CASE NO.:  06-50298-LMK

  Debtor.                                                              CHAPTER:  7
_____/

JOHN E. VENN, JR., TRUSTEE,

  Plaintiff

v.                                                                              ADV. PROC. NO.:  07-05006-LMK

DON WARNER REINHARD &
SARAH A. REINHARD,

  Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS

THIS MATTER is before the Court on the Motion to Dismiss filed by Don Reinhard (the "Motion," Doc. 9).  The parties have agreed to treat Mr. Reinhard's Motion as a motion for partial summary judgment as to Count I of the complaint, which alleges that the Debtor is limited to exempting $125,000 in his homestead real property pursuant to 11 U.S.C. § 522(p) (2006).  The issue presented is whether or not the $125,000 cap applies where a residence owned for more than 1215 days before the filing of the petition acquires homestead status within the 1215 days.  There being no genuine issues of material fact, and the Defendants being entitled to judgment as a matter of law, the Motion will be granted for the reasons more fully explained herein.  This is a core proceeding over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(b)(2)(B), 1334, and 1408.

1

*Facts*

For purposes of the Motion, the facts are accepted as undisputed.  The Debtor and his wife acquired title to 1976 Scenic Highway 30A, Seaside, Florida (the "Seaside Property") on February 24, 1995.  However, they resided in Tallahassee, Florida until on or around June 30, 2005.  During the 1215-day period in § 522(p), the Debtor and his wife moved into the Seaside Property and designated it their homestead.  When the Debtor filed his voluntary Chapter 7 petition on November 3, 2006, the Seaside Property was worth approximately $4,500,000 and was encumbered by approximately $2,050,000 of debt.  There has been no suggestion that any equity was transferred from the prior residence in Tallahassee to the Seaside Property during the 1215-day period.  The question is whether, within the meaning of § 522(p), the Debtor acquired any amount of interest in value in the Seaside Property when it acquired homestead status under Florida law.

*Applicable Law*

Determining whether the acquisition of Florida homestead status falls within § 522(p) raises issues of both federal and state law.  Such interwoven questions are not unfamiliar to federal courts. For example, in *United States v. Craft*, 535 U.S. 274 (2002), the U.S. Supreme Court was presented with the question whether a tenant by the entirety under state law possesses "property" or "rights to property" within the meaning of § 6321 of the federal Tax Code.  The Court determined this was a question of federal law which was largely dependent upon state law.  *Id.* at 278.  Similarly, whether the Debtor in this case acquired "any amount of interest" when he designated the Seaside Property as his homestead is a question of federal law which primarily depends upon Florida homestead law. Following the analysis laid out in *Craft*, I must look initially to state law to determine what the Debtor acquired when he designated the Seaside Property as his homestead, then to federal law to determine whether that constitutes "any amount of interest" within

2

the ambit of § 522(p). I am mindful that I should "consider the substance of the rights state law provides, not merely the labels the State gives these rights or the conclusions it draws from them," as such state-law labels "are irrelevant to the federal question of which bundles of rights constitute" any amount of interest. *Id.* Accordingly, the rights and limitations created by Florida's homestead exemption are a matter of state law, but whether those rights and limitations constitute "any amount of interest" within the meaning of § 522(p) is determined by federal bankruptcy law. *See also Butner v. U.S.*, 440 U.S. 48, 54-55 (1979).

### *Florida Homestead*

Though similar concepts existed at common law, homestead legislation is uniquely American. George L. Haskins, *Homestead Exemptions*, 63 HARV. L. REV. 1289 (1950). The purpose of Florida's homestead provision—to preserve the family's interest in the family home—is a strongly held public policy, and the provision is liberally construed in order to protect the debtor's property from creditors. *See Snyder v. Davis*, 699 So. 2d 999, 1002 (Fla. 1997); *Olesky v. Nicholas*, 82 So. 2d 510, 512 (Fla. 1955).

Florida homestead status carries with it an exemption from forced sale. Section 4(a) of Article X of the Constitution of the State of Florida provides in part that

> SECTION 4. Homestead; exemptions.—
> (a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, [a homestead] owned by a natural person.

Fla. Const. art. X, § 4(a). Thus, homestead property in Florida is exempt from execution for most types of unpaid debts. *See Butterworth v. Caggiano*, 605 So.2d 56, 60 (Fla. 1992).

Homestead status is not only an exemption from forced sale under process of a court, but it is also a limitation on alienation of the homestead property, as provided in § 4(c) of Article X:

> (c) The homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner's spouse if there be no minor child. The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift and, if married, may by deed transfer the title to an estate by the entirety with the spouse. If the owner or spouse is incompetent, the method of alienation or encumbrance shall be as provided by law.

Fla. Const. art. X, § 4(c). Testamentary transfers of homestead property by owners who have minor children are ineffective, and a married owner who desires to transfer the homestead property must do so with his or her spouse. *See Johns v. Bowden*, 66 So. 155 (Fla. 1914); *In re Estate of Melisi*, 440 So. 2d 584 (4th Fla. Dist. Ct. App. 1983).

Though any beneficial interest in land may support a claim of homestead, the property must acquire homestead status prior to the attachment of the creditor's lien in order for the exemption to apply. *See Bessemer v. Gamble*, 27 So. 2d 832, 833 (Fla. 1946); *see also Callava v. Feinberg*, 864 So. 2d 429, 431 (3rd Fla. Dist. Ct. App. 2003). Thus, the claimant must have some existing property interest to which homestead status can attach. *Cf. Pasco v. Harley*, 75 So. 30, 33 (Fla. 1917) (stating that "[t]he Constitution does not contemplate that the exemptions allowed shall extend to any title, right, or interest in property that is not owned by the head of a family residing in this state . . . . [T]he right of exemption is no greater than his title and interest in the property"). The acquisition of an interest in property and the acquisition of homestead status are therefore distinctly different. Homestead status attaches to protect property after it is acquired by the homesteader.

The acquisition of homestead status does not confer any additional property interest or rights in property. In *Johns v. Bowden*, 66 So. 155 (Fla. 1914), a child challenged his father's testamentary disposition of homestead property on the ground that the transfer was prohibited by the Florida Constitution's limitations on alienation. The Florida Supreme Court found that the conveyance was, in effect, a will attempting an end run around the alienability limitations, and it concluded that such conveyances are not effective when the owner of the homestead leaves a

4

wife or child. *Johns*, 66 So. at 155. In discussing the nature of the homestead, the Florida Supreme Court explained that it is a status of, not an interest in, property:

> The **status** of a homestead which the Constitution impresses upon property under certain circumstances **does not change the nature of the estate** in the property owned by the head of a family residing in this state, but merely exempts such property from certain liabilities to which it would otherwise be subject, and limits the owner's inherent power of alienation, by making such property exempt from forced sale under process of any court, and by making the real estate inalienable without the joint consent of the husband and wife, when that relation exists.

*Id.* at 159 (internal quotations omitted and emphasis added).

Homestead is simply a status, constitutionally defined, which exempts certain property from execution and limits its alienability. It is not a property interest. When a Florida resident's property acquires homestead status, the owner does not acquire any of the rights traditionally associated with property interests: the right to possession, the right to use, the right to transfer—the owner already holds whatever of these he has. Accordingly, homestead status in Florida is not properly conceptualized as a stick in the bundle; rather, it is a protective safe in which the bundle is put.

### *11 U.S.C. § 522(p) (2006)*

I next turn to the question whether the acquisition of Florida homestead status alone falls within the ambit of § 522(p). Section 522(p) limits to $125,000[1] the exemption a debtor may claim on any amount of interest in value in four types of property that the debtor acquires within 1215 days of the filing of the bankruptcy petition. In order for the § 522(p)(1)(D) limit to apply (1) the debtor must acquire; (2) an amount of interest; (3) during the 1215-day period; (4) exceeding in the aggregate $125,000 in value; (4) in real or personal property that is claimed as a homestead.

---

[1] The Judicial Conference of the United States adjusted the dollar amount in § 522(p) to $136,875 by notice dated February 14, 2007 pursuant to 11 U.S.C. § 104. *See* 72 F.R. 7082.

What Congress meant in § 522(p) is not entirely clear in this situation. At least one court has held that the phrase encompasses the acquisition of a "homestead interest," *In re Greene*, 346 B.R. 835 (Bankr. D. Nev. 2006), while other courts disagree, *Wallace v. Rogers (In re Rogers)*, 354 B.R. 792 (N.D. Tex. 2006); *In re Lyons*, 355 B.R. 387 (Bankr. D. Mass. 2006). There is enough ambiguity to require the statute to be construed.

The starting point of statutory construction is the language itself. *See Watt v. Alaska*, 451 U.S. 259, 265-66 (1981). The text of § 522(p)(1)(D) provides in relevant part that "a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of filing of the petition that exceeds in the aggregate $125,000 in value in . . . real or personal property that the debtor or a dependant of the debtor claims as a homestead" (emphasis added).

There are several indications in the text of § 522(p) that Congress intended the term "interest" to refer a quantitative or monetary value in property. The statute refers to "any **amount** of interest." § 522(p)(1) (emphasis added). A debtor is limited to an "aggregate $125,000 in **value** in" certain types of property. *Id.* (emphasis added). The use of the words "amount, "value," as well as the dollar figure of $125,000, indicate that Congress intended to convey a monetary meaning in connection with "interest." *See Rogers*, 354 B.R. at 796; *Lyons*, 355 B.R. at 390-91; *In re Rasmussen*, 349 B.R. 747, 756 (Bankr. M.D. Fla. 2006). In addition, § 522(p)(1)(D) refers to the acquisition of an amount of interest in value in "real or personal **property**."

There are also extra-textual sources which shed some light on the meaning of § 522(p). *See Dolan v. U.S. Postal Service*, 546 U.S. 481, 486 (2006) (indicating that the use of aids to statutory construction other than the text of a statute can inform the analysis). The term "interest" is not defined in the Bankruptcy Code. However, words in statutes should be given their common, ordinary meanings unless Congress provides otherwise, *see C.I.R. v. Brown*, 380 U.S. 563, 570-71 (1965), and Congress is presumed to know the legal background against which it legislates, *see*

*U.S. v. U.S. Gypsum Co.*, 438 U.S. 422, 437 (1978).  Therefore, courts have often used legal dictionaries to ascertain the meaning of words in legislation, *see, e.g., Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97-98 n.16 (1983).  According to Black's Law Dictionary (8th ed. 2004), an interest is "[a] legal share in something; all or part of a legal or equitable claim to or right in **property**" (emphasis added), which indicates that the debtor must acquire some amount of interest in the value of one of the four types of property listed during the 1215-day period in order for the cap to apply.

The legislative history of § 522(p) also provides some insight.  The House Report states that § 522 was amended

> to impose an aggregate monetary limitation of $125,000, subject to Bankruptcy Code sections 544 and 548, on the value of property that the debtor may claim as exempt under State or local law pursuant to section 522(b)(3)(A) under certain circumstances. The monetary cap applies if the debtor acquired such property within the 1,215-day period preceding the filing of the petition and the property consists of any of the following: (1) real or personal property of the debtor or that a dependent of the debtor uses as a residence; (2) an interest in a cooperative that owns property, which the debtor or the debtor's dependent uses as a residence; (3) a burial plot for the debtor or the debtor's dependent; or (4) real or personal property that the debtor or dependent of the debtor claims as a homestead.

H.R. Rep. No. 109-31 pt. 1, at 81 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 148.  The acquisition of homestead status is not listed as one of the types of property to which the monetary limit applies.  In debating BAPCPA, some members of Congress indicated that § 522(p) was intended to close the "mansion loophole":

> The legislation will also bring to an end other abuses that occur under the current bankruptcy system. For example, it closes the "mansion loophole," which allows opportunistic debtors to avoid paying their creditors by buying a house in a State with an unlimited or extremely generous homestead exemption, and then declaring bankruptcy.

151 CONG. REC. S1726-01, S1779 (daily ed. February 28, 2005) (statement of Sen. Specter).  The "mansion loophole" permitted debtors to flee to states with generous homestead exemption laws on the eve of the filing of the petition and then transfer non-exempt assets into an exempt

7

homestead in order to keep those assets from creditors. This is not such a case. Here, the Debtor, a long-time resident of Florida, has owned the Seaside Property since 1995. He did not transfer any non-exempt assets into the exempt homestead during the 1215-day period, and he moved to the Seaside Property from within the same state.

One might argue that "any amount of interest" refers to a more expansive notion, incorporating every conceivable interest that the debtor has, including the legal interest the debtor has in having his or her constitutional rights enforced. But Congress did not reach that far. Congress could have defined all debtors' exemptions to be whatever they would have been 1215 days before the filing of the petition. Instead, Congress defined the cap more narrowly.

Finally, assuming that homestead status is an amount of interest within the meaning of § 522(p), any such interest arguably would not be included in the $125,000 limit pursuant to § 522(p)(2)(B) in this case. The Debtor transferred his homestead interest, whatever it was, from his prior residence to the Seaside Property, which are both in Florida. The amount of interest limited by the $125,000 cap does not include any interest transferred from a debtor's previous principal residence to the current principal residence when both are located in the same state. § 522(p)(2)(B).

### *Conclusion*

The acquisition of Florida homestead status alone does not fall within the limits on exemptions imposed by § 522(p). Homestead status under Florida law is not a property interest. The homesteader's legal or equitable claim to or right in the homestead property arises prior to and independently of the acquisition of homestead status. Homestead status simply exempts the homesteader's existing share in the property from forced sale and limits its alienability. Therefore, the Debtor did not acquire any amount of interest in value in the Seaside Property when it acquired homestead status.

For the foregoing reasons, the Debtor's claim of exemptions with respect to his homestead shall not be limited by § 522(p).  Accordingly, it is hereby

ORDERED and ADJUDGED that the Debtor-Defendant's Motion to Dismiss (Doc. 9) is GRANTED as to Count I of the Complaint.

DONE and ORDERED in Tallahassee, Florida this 16th day of October, 2007.

/s/ Lewis M. Killian

LEWIS M. KILLIAN, JR.
United States Bankruptcy Judge

cc: all interested parties